UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHELLE HALL** *on behalf of herself, individually, and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>**ADELPHIA THREE CORP.** *et. al*,<br><br>Defendants. | Civil Action<br>No. 21-01106<br><br>**OPINION** |

**Appearances:**

Tyler J. Burrell
Charles Joseph Kocher
MCOMBER MCOMBER & LUBER, P.C.
39 E. Main Street
Marlton, NJ 08053

    *On behalf of Plaintiff Michelle Hall.*

Joseph P. Grimes
JOSEPH P. GRIMES, ESQUIRE, LLC
810 Asbury Avenue
Suite 212
Ocean City, NJ 08226

    *On behalf of Defendants Adelphia Three Corp. d/b/a Phily Diner, Petro Kontos, and William Balis.*

**O'HEARN, District Judge.**

# INTRODUCTION

This case comes before the Court on Plaintiff Michelle Hall's Motion to Certify Class. (ECF No. 38). The Court heard oral argument pursuant to Local Rule 78.1 on January 23, 2023. (ECF No. 60). For the reasons below, the Court will **GRANT** Plaintiff's Motion.

## I. FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

This is a hybrid class/collective action brought by Plaintiff Michelle Hall, on behalf of herself and other tipped employees, alleging that Defendants Adelphia Three Corp., doing business as Phily Diner, Petro Kontos, and William Balis ("Defendants") deprived them of their applicable minimum wage and overtime pay by taking a "tip credit" without giving adequate notice in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.*, New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*, and common law principles of unjust enrichment. (Compl., ECF No. 1).

Plaintiff was employed as a waitress by Defendants, for approximately ten years until May 29, 2019. (PSMF, ECF No. 38-12 ¶ 6). Between January 2015 and December 2018, Defendants' payroll records reveal there were approximately 191 "tipped employees." (PSMF, ECF No. 38-12

---

[1] Because the Court must make factual determinations to support Rule 23 findings by a preponderance of the evidence standard, *Reyes v. NetDeposit L.L.C.*, 802 F.3d 469, 484 (3rd Cir. 2015), the Court does not accept the factual allegations of the Complaint as true for the purpose of this Motion and will make all necessary factual determinations, *Marcus v. BMW of N. Am., L.L.C.*, 687 F.3d 583, 591 (3d Cir. 2012) ("Rule 23 gives no license to shy away from making factual findings that are necessary to determine whether the Rule's requirements have been met."). Because Plaintiff relies on her Statement of Material Facts not in Dispute submitted in support of her Motion for Summary Judgment, this Court will do the same.

¶ 8).[2] The parties agree that Defendants' "policies, practices, and procedures were uniform among all tipped employees including Plaintiff" and further that "[t]here were no policies, practices, or procedures unique to Plaintiff." (PSMF, ECF No. 38-12 ¶¶ 9–11, 31–33). Since 2015, Defendants used "Olympic Payroll—a third party vendor—to facilitate payroll operations and processing," (PSMF, ECF No. 38-12 ¶ 22), and the parties do not dispute the accuracy of the payroll information, (PSMF, ECF No. 38-12 ¶¶ 15–28).

From 2015 to 2018, Defendants paid tipped employees $1.94 per hour in cash wages for the day shift and $3.88 for the night shift. (PSMF, ECF No. 38-12 ¶¶ 34–35). It is undisputed that all tipped employees' paystubs contained four boxes of information: earnings, taxes, deductions, and year-to-date. (PSMF, ECF No. 38-12 ¶ 33). Plaintiff's pay stubs—produced as part of the pending motions for summary judgment—reveal one line labeled "tips" with amounts varying by week and another line labeled "meals" consistently showing a $10 credit ("meal credit") in the earnings box. (Exemplar Pay Stub, ECF No. 39-1 at 21).[3] Plaintiff's tips and the $10 meal credit

---

[2] Plaintiff's SOMF indicates a time frame of January 2015 to December 2020 but the payroll records produced only cover January 2015 through December 2018 as Plaintiff conceded during argument. Defendants admit that there are 191 tipped employees during that period but deny this fact on the basis that not all of those tipped employees would have claims under the applicable statute of limitations.

[3] This exemplar pay stub was produced with Plaintiff's brief in support of her Motion for Summary Judgment, (ECF No. 39-1), filed at the same time as this Motion, (ECF No. 38). However, since this Court is required to conduct a rigorous review and not shy away from factual and legal determinations even if they go to the merits of the case, *Marcus*, 687 F.3d at 591, the Court will use the summary judgment exhibits from both parties to address underlying factual and legal issues relevant to class certification.

appear again in the deductions box. (Exemplar Pay Stub, ECF No. 39-1 at 21). This is evident from Plaintiff's exemplar pay stub:

```
OLYMPIC PAYROLLS                                                           Phily Diner 073
  EMPLOYEE # 300592  NAME: MICHELE HALL           SSN: XXX-XX-4613  M 0 0              Acc No: E49
        E A R N I N G S          T A X E S        D E D U C T I O N S    Y E A R - T O - D A T E
  DESCR  HOURS  RATE   AMOUNT   DESCR   AMOUNT   DESCR  AMOUNT  DESC AMOUNT  DESCR  AMOUNT  DESCR  AMOUNT  DESCR  AMOUNT
  REG    5.75   1.94    11.15   FICA     40.14   TIPS.  335.31               REG   7353.31  FICA   2077.63
  OVT    6.25   7.26    45.38   FED      30.26   MEALS   10.00               OVT   2432.08  FED    1614.53
  TIPS.                335.31   STATE     8.57                               TIPS. 17373.19 STATE   437.08
  MEALS                 10.00   SU/DI     3.77                               MEALS  517.58  SU/DI   195.12
  JB1   34.25   3.88   132.89

        GROSS:        534.73  TAXES:    82.74   DEDUCTIONS:     345.31  YGROSS  27676.16   Net Pay:  ****$106.68
   Pay Period: 12/17/18 To: 12/23/18  Check No:  9287 ADELPHIA THREE CORP.   31 S BLACKHORSE PIK RUNNEMEDE NJ 08078
```

Starting with the December 31, 2018 January 6, 2019 pay period until Plaintiff left employment in May 2019, Plaintiff's pay stubs no longer reflected a meal credit as earnings or deductions and showed a regular wage of $2.13 and an overtime wage of $7.48. (Pla. Pay Subs, ECF No. 40-2, Exh. 10, Paycheck 122).

Plaintiff filed her Complaint on January 25, 2021, bringing a class action for state law claims encompassing a class of

> All current and former Tipped Employees who work or have worked for Defendants in the State of New Jersey at any time six years prior to the filing of this action through the entry of judgment in this action (the "New Jersey Class").

(ECF No. 1 ¶ 46). On June 6, 2022, Plaintiff filed the Motion to Certify Class presently before this Court, (ECF No. 38), which Defendants oppose, (ECF No. 46). The Court heard argument on January 23, 2023. (ECF No. 60).

## II.     LEGAL STANDARD

The requirements for class certification are set forth in Federal Rule of Civil Procedure 23. Under Rule 23, the moving party bears the burden of showing that the putative class satisfies the four prerequisites of Rule 23(a), and that the action can be maintained under at least one subsection of Rule 23(b). *See Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184–84 (3d Cir. 2001); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997).

> The four prerequisites of Rule 23(a) are satisfied when:
>
> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). "Commonly referred to as numerosity, commonality, typicality, and adequacy of representation, these four requirements are 'meant to assure both that the class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances.'" *Banda v. Corzine*, No. 07–4508, 2007 WL 3243917, at *15 (D.N.J. Nov.1, 2007) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)).

Upon satisfying Rule 23(a), the moving party must then show that the putative class falls under at least one of the subsections of Rule 23(b). *Id.* at *18. In the present case. Plaintiff brings claims under Rule 23(b)(3), which requires that "[(i)] questions of law or fact common to class members predominate over any questions affecting only individual members, and [(ii)] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Considerations in a Rule 23(b)(3) determination include,

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Courts deciding whether to certify a class under Rule 23 must undertake a "rigorous analysis" and consider all relevant evidence and arguments presented by the parties. *See In re Hydrogen Peroxide Antitrust Lit.*, 552 F.3d 305, 309–10 (3d Cir. 2008). Decisions to certify a class require "findings by the court, not merely a threshold showing" by the moving party, that the requirements of Rule 23 are met. *Id.* at 307. The Court "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits," *id.*, and those factual

determinations supporting Rule 23 findings must be made by a preponderance of the evidence, *Reyes v. NetDeposit L.L.C.*, 802 F.3d 469,484 (3rd Cir. 2015); *In re Ford Motor Co. Ignition Switch*, 174 F.R.D. 332, 339 (D.N.J. 1997) (finding that it may be necessary for the court "to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied.").

### III.   DISCUSSION

Plaintiff moves for class certification on her state law claims only: minimum wage and overtime violations due to deficient tip credit notice based on the NJWHL and unjust enrichment.[4] Because there does not appear to be a challenge to the ascertainability, numerosity, or superiority, the Court will review these factors only briefly. The remainder of this Opinion will address the adequacy of representation, commonality, typicality, and predominance requirements as well as Defendants' arguments that Plaintiff cannot represent the class because (1) she has a conflict due to her state law action against Defendants; and (2) Plaintiff is unable to show that Defendants paid her below minimum wage in violation of the NJWHL. For the reasons that follow, the Court will **GRANT** Plaintiff's Motion to Certify Class. (ECF No. 38).

#### A. Ascertainability

A class is ascertainable if it is (1) "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). Further, "a plaintiff [need not] be able to identify all class members at class certification—instead, a plaintiff need only show that class members can be identified." *Id.* (internal quotation omitted).

---

[4] Plaintiff was granted conditional class certification for the collective action as to her FLSA claims, (ECF No. 42), but has not yet moved for final class certification.

>Plaintiff proposes the class as
>
>>All current and former individuals who worked as servers and/or bartenders at Defendant Adelphia Three Corp.'s restaurant facilities operating under the trade name of Phily Diner, located at 31 S. Black Horse Pike, Runnemede, New Jersey 08078 any time between January 25, 2015 and the present.

(Proposed Order, ECF No. 38-13). The parties appear to agree that, given the payroll records produced in discovery, a class of tipped employees should be easily ascertainable. Defendants do not challenge this requirement. The Court thus finds that Plaintiff has satisfied the ascertainability requirement of Rule 23(a).

### B. Numerosity

There is no certain minimum number of plaintiffs required in order to bring a class action suit. *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001). However, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.* at 226–27. Here, Plaintiff alleges that she has identified approximately 191 tipped employees with wage violations based upon Defendants' payroll records, (Motion for Class Cert., ECF No. 38-1 at 12). Additionally, Plaintiff's counsel represented during argument, and Defendant's counsel conceded, that the class would still be greater than 40 members even if

limited to the payroll records produced for January 2015 through December 2018.[5] As such, the Court finds that Plaintiff has satisfied the numerosity requirement of Rule 23(a).[6]

### C. Superiority

In the superiority inquiry, courts must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996), *aff'd sub nom. Windsor*, 521 U.S. 591 (internal quotations omitted). Courts should also consider four nonexclusive factors: "(1) the interest of individual members of the class in controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

Here, Defendants do not challenge the superiority factor and the Court finds that judicial efficiency weighs in favor of certifying the class. The putative class members' proofs are not complex—they are all based in Defendants' systematic payroll practices—and the calculation of

---

[5] Plaintiff's representation of 191 tipped employees appears to rely on payroll records extending to December 2020 but those records were not provided to the Court with this Motion. (Pla. SOMF, ECF No. 38-12 ¶ 8).

[6] Plaintiff's counsel represented at argument—and it is equally clear to this Court based on the payroll records provided—that Plaintiff would be able to show more than 40 putative class members regardless of whether this Court applies a six-year statute of limitations applicable to the unjust enrichment claim, a three-year statute of limitations for willful violations of the NJWHL, or a two-year statute of limitations under the NJWHL. *See Derieux v. Fedex Ground Package Sys., Inc.*, No. 21-13645, 2023 WL 349495, at *4 (D.N.J. Jan. 20, 2023) (citing *Morales v. Aqua Pazza LLC*, No. 20-6690, 2022 WL 1718050, at *4 n.8 (D.N.J. May, 27, 2022)) ("For claims accruing before August 6, 2019, the NJWHL provided a two-year statute of limitations."); *Rong Chen v. Century Buffet & Rest.*, No. 09-1687, 2012 WL 113539, at *4 (D.N.J. Jan. 12, 2012) ("Claims brought pursuant to the FLSA and NJWHL must be filed within two years of the date of accrual of an alleged violation, unless the violation is willful, which extends the limitations period to three years."). Thus, the Court need not decide the appropriate statute of limitation at this time and will address the issue in its separate decision regarding the pending cross-motions for summary judgment.

their damages, while different, will be quickly determinable by diligent review of payroll records. Further, each putative class member's case turns on the Defendants' alleged insufficient tip credit notice and failure to pay the applicable minimum and overtime wage, thus making class management of potentially hundreds of individuals highly favorable to individual trials. Therefore, the Court finds that Plaintiff has satisfied the superiority requirement of Rule 23(b)(3).

### D. Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Windsor*, 521 U.S. at 625. Two inquiries must be made to determine adequacy: the first looks at the qualifications of the counsel that is representing the class and the second looks at whether there are conflicts of interest between the representatives and the classes. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009).

Here, Plaintiff represents that her counsel are "qualified, experienced, and able to conduct this litigation" and points to cases in which they have previously been approved to represent classes. *See Caddick v. Tasty Baking Co.*, No. 19-02106, 2021 U.S. Dist. LEXIS 206991, at *13 (E.D. Pa. Oct. 27, 2021) (involving wage and hour claims under New Jersey, Pennsylvania, Delaware, and Maryland law and FLSA); *Crawford v. FHG Realty Urban Renewal LLC*, No. 16-07797, ECF No. 62 (D.N.J. Mar 15, 2019) (involving FLSA and New Jersey law). The Court agrees.

As to potential conflicts, Defendants argue that neither Plaintiff nor their counsel can represent the class due to an "un-waivable conflict of interest" arising out of counsel's representation of Plaintiff in a state law action against Defendants relating to her employment. (Def. Br. in Opp., ECf No. 46 at 7–9, 11). Defendants have provided no legal support for this argument. Regardless, the argument is now moot because Plaintiff's state law action has since

settled, and any potential conflict extinguished. (Letter, ECF No. 55); *see Stoneback v. ArtsQuest*, No. 12 -03287, 2013 WL 3090714, at *11 (E.D. Pa. June 20, 2013) ("Here, however, to the extent [the named plaintiff] had a conflict of interest during the pendency of her separate lawsuit against [the defendant], such a conflict is no longer present because her lawsuit against [the defendant] concerning the termination of her employment has concluded."); *see also Pichardo v. Carmine's Broadway Feast Inc*, No. 15-03312, 2016 WL 4379421, at *8 (S.D.N.Y. June 13, 2016), *R. & R. adopted sub nom. Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-3312, 2016 WL 5338551 (S.D.N.Y. Sept. 23, 2016) ("The Court is not satisfied that a separate lawsuit initiated by a proposed class representative against the defendant in the putative class action necessarily creates a 'fundamental' conflict of interest."). As such, the Court finds that Plaintiff can satisfy the adequacy of representation requirement of Rule 23(a).

### E.  Commonality, Typicality, and Predominance

Because both commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence," courts may consider them together. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Courts may also consider predominance at this junction "[b]ecause [Rule] 23(b)(3)'s predominance requirement incorporates the commonality requirement." *Georgine*, 83 F.3d at 626. Here, Defendants' primary objections—that Plaintiff's separate state law action against Defendants creates a fundamental conflict and she cannot show a wage and hour violation—are relevant to the commonality, typicality and predominance factors and thus the Court will analyze them together.

First, to meet the commonality requirement, Plaintiff must show that she "share[s] at least one question of fact or law with the grievances of the prospective class." *In re Schering Plough*, 589 F.3d at 597.

Second, to determine whether Plaintiff has demonstrated typicality, courts ask "whether the named plaintiff's claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006) (citation omitted); *see also Stewart*, 275 F.3d at 227 ("The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members."). The Third Circuit has stated the following regarding typicality:

> [T]he proper consideration in assessing typicality . . . include[s] three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Schering Plough*, 589 F.3d at 599. "[I]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002) (citation omitted), *aff'd* 84 F. App'x 257 (3d Cir. 2004). "A claim 'framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice.'" *St. Louis Chiropractic v. Fed. Ins. Co.*, No. 07-03110, 2008 WL 4056225, at *7 (D.N.J. Aug. 26, 2008) (quoting *Baby Neal*, 43 F.3d 48, 63 (3d Cir. 1994)). A defendant, on the other hand, can challenge typicality by proving the named plaintiff or small subclass is "subject to a unique defense that is likely to become a

major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006); *see Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974).

Third, a plaintiff proceeding under Rule 23(b)(3) must also show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." F.R.C.P. 23(b)(3). The "focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments. Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). This is particularly so where the inquiry necessarily focuses on what defendants did rather than what class members did, so the proof for these issues will not vary among class members. *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2003).

Here, Plaintiff alleges that Defendants failed to give required notice of the intent to take a tip credit and failed to pay her and the putative class members minimum wage and overtime pay in violation of the NJWHL and common law principles of unjust enrichment. (Motion to Cert. Class, ECF No. 38-1 at 12). At the outset, Plaintiff makes a strong case for the commonality and typicality of the class members. All putative class members were employed by Defendants as tipped employees and allegedly subjected to the same payroll practices and policies. Resolution of the putative class claims require the Court to look at Defendants' payroll policy, tip credit notice practice, and regulatory compliance as opposed to the actions of individual putative class members.

During argument, Defendants argued that—based on payroll records—not all of the putative class members worked over 40 hours in a particular pay period and, therefore, these class members would have no overtime claims and may ultimately have been paid the proper amount. The Court finds this argument unpersuasive. First, the determination of which class members may have overtime claims can quickly be determined by the detailed payroll records and is not likely

to predominate over the claims common to the class. Second, to the extent that not all of the putative class members worked overtime, they may still have common claims and damages related to the tip credit notice violation. Finally, any such differences between class members with and without overtime violations can be addressed by individualized damages, and do not militate against class certification. *See Pichardo*, 2016 WL 5338551, at *4 (citing *Schear v. Food Scope Am., Inc.,* 297 F.R.D. 114, 126 (S.D.N.Y. 2014) ("[T]he Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement.")).

Defendants further argue that Plaintiff's failure to show a wage and hour violation as to her own claim destroys commonality and typicality. The Court disagrees.

Regardless of the validity of potential wage violations—whether Defendants paid the required $2.13 minimum cash wage or below—Plaintiff has alleged a tip credit notice violation that is typical of and common to the members of the putative class. Plaintiff's pay stubs through May 2019 show that Defendants paid her $1.94 or $2.13 depending on whether a meal credit was applied, relying on the tip credit to make up the rest of Plaintiff's minimum wage. (Plaintiff's Payroll Records, Exh 9, ECF No. 40-6). Plaintiff's pay stubs never show an hourly rate equivalent to the applicable minimum wage—in other words, it appears that Defendants took tip credit against their obligation to pay Plaintiff minimum wage for the entirety of her employment. (Plaintiff's Payroll Records, Exh 9, ECF No. 40-6).[7] Further, Defendants do not contend that they took a tip credit only for Plaintiff and not other tipped employees.

---

[7] Because the alleged tip credit violations are continuous for Plaintiff's employment up to and including May 29, 2019, her claims would not be barred by any of the three potential statute of limitations. *See supra* note 5.

To the extent Defendants also challenge whether Plaintiff can prevail on a tip credit notice violation under the NJWHL at all,[8] such a defense is a purely legal question equally applicable to all putative class members and would not destroy typicality or commonality. Thus, this argument will not prevent the certification of the class and is more appropriately addressed at the summary judgment stage.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Certify Class, (ECF No. 38), is **GRANTED** pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). An appropriate Order will be entered.[9]

*Christine P. O'Hearn* (signature)

**Christine P. O'Hearn**
**United States District Judge**

---

[8] *See Casco v. Ponzios RD, Inc.*, No. 16-2084, 2019 WL 1650084, at *7 (D.N.J. Apr. 17, 2019) ("The parties also contest whether the above FLSA notification analysis applies equally to Plaintiffs' NJWHL claims. . . . At this time, the Court need not resolve whether and to what extent the FLSA and NJWHL are coextensive on the tip credit notification issue . . ."); *but see* N.J.A.C. 12:56-3.5(q) (near identical tip credit notice requirements to that of the FLSA, effective August 3, 2020).

[9] To facilitate notice, Plaintiff requests "the names, last known mailing addresses, dates of employment, job title, phone numbers, email addresses, and the last four digits of the Social Security numbers of all individuals who have worked as Tipped Employees for Defendants since January 25, 2015." (Proposed Order, ECF No. 38-13). District courts may "regulate their practice [of facilitating notice] in any manner not inconsistent with federal or local rules." *Magee v. Francesca's Holdings Corp.*, No. 17-565, 2018 WL 10602187, at *4 (D.N.J. Nov. 6, 2018) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989)) (internal quotations and citations omitted). Absent a showing that first class mail would be insufficient to notice class members, courts generally do not order the disclosure of personal information beyond mailing addresses. *Steinberg v. TD Bank, N.A.*, No. 10-56, 2012 WL 2500331, at *7 (D.N.J. June 27, 2012). Because Plaintiff has not alleged that first class mail would be insufficient, this Court declines to order the disclosure of the last four digits of the Social Security numbers.